UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE
RASHAWN HAWARI-RASULULLAH,
Plaintiff,
v.
UNITED STATES OF AMERICA; RICHARD LUNA, Warden, FCI Berlin, in his individual and official capacities; LIEUTENANT S. TAWES, in his individual and official capacities; LIEUTENANT A. MCCORMACK, in his individual and official capacities; LIEUTENANT D. HENSLEY, in his individual and official capacities; OFFICER PAIGE, in his individual and official capacities; OFFICER HEWITT, in his individual and official capacities; OFFICER J. O'SULLIVAN, in his individual and official capacities; OFFICER D. LEBRON, in his individual and official capacities; OFFICER J. BECK, in his individual and official capacities; PATRICK GOLDEN, M.D., in his individual and official capacities; MONIQUE COTE, R.N., in her individual and official capacities; BRANDEE PELLETIER, R.N., in her individual and official capacities; C. LARIN, QIIC R.N., in her individual and official capacities; TIMOTHY BARNETT, Administrator, National Inmate Appeals, in his individual and official capacities; JOHN/JANE DOES 1 30,
Defendants.
Civil Action No. _____
COMPLAINT
(Jury Trial Demanded)

## I. INTRODUCTION

1.
Plaintiff Rashawn Hawari-Rasulullah is a federal prisoner proceeding pro se.

2.
This action arises from a continuing pattern of retaliation, religious discrimination, excessive force, prolonged restraints, deliberate indifference to serious medical needs, failure to protect, and related constitutional and statutory violations committed against Plaintiff while incarcerated at Federal Correctional Institution Berlin ("FCI Berlin").

3.
Plaintiff seeks relief pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 2680.

4.
Plaintiff further seeks relief pursuant to the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq.

5.
Plaintiff additionally seeks relief pursuant to Bivens v. Six Unknown Named Agents, to the extent permitted by applicable law.

6.
Plaintiff demands a trial by jury.

## II. JURISDICTION AND VENUE

7.
This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

8.
This Court has jurisdiction pursuant to 28 U.S.C. § 1346(b).

9.
Venue is proper pursuant to 28 U.S.C. § 1391 because the events occurred at FCI Berlin in Berlin, New Hampshire.

## III. PARTIES

10.
Plaintiff Rashawn Hawari-Rasulullah is presently incarcerated at USP Pollock.

11.
Defendant United States of America is liable under the FTCA for the negligent and wrongful acts of federal employees acting within the scope of employment.

12.
Defendant Richard Luna was the Warden of FCI Berlin and exercised supervisory authority over staff, discipline, security, use of force, and inmate welfare.

13.
Defendant Lieutenant S. Tawes supervised Plaintiff's intake, disciplinary processing, SHU placement, and religious property restrictions.

14.
Defendant Lieutenant A. McCormack participated in disciplinary and retaliatory actions against Plaintiff.

--------------------------------------------------------------------------------

15.
Defendant Lieutenant D. Hensley supervised and authorized calculated uses of force against Plaintiff.
16.
Defendant Officer Paige participated in the June 24, 2023 search and restraint events.
17.
Defendant Officer Hewitt confiscated Plaintiff's religious kufi and participated in SHU processing.
18.
Defendant Officer J. O'Sullivan participated in threats, intimidation, and retaliatory conduct.
19.
Defendant Officer D. LeBron participated in the June 27, 2023 use-of-force incident.
20.
Defendant Officer J. Beck participated in SHU housing decisions affecting Plaintiff.
21.
Defendants Patrick Golden, M.D., Monique Cote, R.N., Brandee Pelletier, R.N., and C. Larin, QIIC R.N., participated in Plaintiff's medical treatment and restraint monitoring.
22.
Defendant Timothy Barnett served as Administrator of National Inmate Appeals.
23.
John/Jane Doe Defendants participated in the acts and omissions alleged herein.
IV. ADMINISTRATIVE EXHAUSTION
24.
Plaintiff exhausted available administrative remedies through the Bureau of Prisons Administrative Remedy Program.
25.
Plaintiff filed BP-8, BP-9, BP-10, and BP-11 remedies regarding the incidents described herein.
26.
Plaintiff pursued remedies concerning Incident Reports:
3789274;
3789288;
3790010;
3790520;
3792218;
3798430;
3800307;
3801634;
3801766;
3812955;
3814326;
3816827;
3817131;
3823925;

27.
Plaintiff submitted an administrative tort claim pursuant to Standard Form 95.
28.
Plaintiff diligently pursued all remedies available to him.
V. EQUITABLE TOLLING
29.
Plaintiff experienced repeated periods of SHU confinement and restricted housing.
30.
Plaintiff lacked meaningful access to legal materials, legal property, and litigation resources.
31.
Plaintiff nevertheless diligently pursued his legal claims.

## VI. STATEMENT OF FACTS

### A. Plaintiff's Religious Exercise and Protected Activity

32.

Plaintiff Rashawn Hawari-Rasulullah is a practicing Muslim whose sincerely held religious beliefs include wearing a religious kufi and engaging in protected religious exercise.

33.

At all times relevant to this action, Plaintiff was a federal prisoner confined within the custody of the Federal Bureau of Prisons.

34.

On or about June 22, 2023, Plaintiff arrived at FCI Berlin following transfer from another federal institution.

35.

Shortly after his arrival, Plaintiff experienced conflict with prison staff concerning his religious kufi.

36.

Plaintiff informed prison staff that he believed interference with his religious practices violated his rights and that he intended to pursue administrative remedies.

37.

Plaintiff engaged in protected conduct by asserting his religious rights and by expressing his intent to file administrative grievances.

38.

Plaintiff alleges that his exercise of religious rights and use of the grievance process became the basis for subsequent retaliatory actions.

### B. June 24, 2023   Lieutenant's Office, Strip Search, and SHU Placement

39.

On June 24, 2023, Plaintiff was escorted from his housing assignment to the Lieutenant's Office by Defendant Officer Paige.

40.

Plaintiff alleges that the escort and subsequent search were conducted in retaliation for Plaintiff's complaints concerning interference with his religious exercise.

41.

Plaintiff alleges that Defendant Officer Paige physically forced Plaintiff into position during the search procedure.

42.

Plaintiff alleges that Defendant Officer Paige pushed his forearm into Plaintiff's back.

43.

Plaintiff further alleges that prison staff threatened the use of OC spray.

44.

Plaintiff completed the search procedure under protest.

45.

Following the encounter, Plaintiff was returned to his housing assignment.

46.

Later on June 24, 2023, prison staff issued Incident Report No.. 3789274 charging Plaintiff with prohibited conduct.

47.

Plaintiff denies the allegations contained within Incident Report No.. 3789274.

48.

Plaintiff alleges that Incident Report No. 3789274 was fabricated, exaggerated, retaliatory, or otherwise issued in bad faith.

49.

Following issuance of the incident report, Plaintiff was transferred to the Special Housing Unit.

50.

During the SHU intake process, Defendant Officer Hewitt confiscated Plaintiff's religious kufi.

51.

Plaintiff objected to the confiscation of his religious property.

52.

Plaintiff alleges that the confiscation substantially burdened his sincerely held religious exercise.

### C. SHU Housing Assignment and Threats

53.

Following Plaintiff's placement in SHU, prison officials attempted to assign Plaintiff to a cell with another inmate.

54.

--------------------------------------------------------------------------------

Plaintiff objected to the proposed housing assignment.

55.

Plaintiff believed that placement in the proposed housing assignment presented a substantial risk of harm.

56.

Plaintiff alleges that Defendant Officer J. Beck participated in decisions concerning Plaintiff's housing assignment.

57.

Between June 24, 2023 and June 27, 2023, Plaintiff alleges that he was subjected to repeated threats and harassment.

58.

Plaintiff alleges that Defendant Lieutenant S. Tawes verbally threatened Plaintiff.

59.

Plaintiff alleges that Defendant Lieutenant A. McCormack verbally threatened Plaintiff.

60.

Plaintiff alleges that Defendant Officer J. O'Sullivan participated in threats and harassment directed toward Plaintiff.

61.

Plaintiff alleges that he was subjected to racial hostility.

62.

Plaintiff alleges that he was subjected to religious hostility.

63.

Plaintiff contends that these actions were taken in retaliation for Plaintiff's religious exercise and use of the grievance process.

D. June 27, 2023   Use of Force and Four-Point Restraints

64.

On June 27, 2023, prison staff attempted to move Plaintiff into another housing assignment.

65.

Defendant Officer D. LeBron attempted to place Plaintiff into a cell that Plaintiff believed was unsafe.

66.

Plaintiff objected to the placement.

67.

A physical confrontation subsequently occurred.

68.

Plaintiff alleges that multiple correctional officers became involved.

69.

Following the confrontation, Plaintiff was physically restrained.

70.

Plaintiff was placed into four-point restraints.

71.

Plaintiff remained restrained for an extended period.

72.

Medical records document that Plaintiff was evaluated while restrained.

73.

Medical personnel documented Plaintiff's blood pressure at approximately 173/99.

74.

Medical personnel documented Plaintiff's pulse at approximately 120 beats per minute.

75.

Medical personnel documented that Plaintiff was visibly agitated.

76.

Plaintiff subsequently complained of pain in his right hand.

77.

Medical records document Plaintiff's complaint that "my right hand hurts."

78.

Medical personnel recorded Plaintiff's pain level as approximately 5/10.

79.

Medical records document that the restraints aggravated Plaintiff's pain.

80.

Plaintiff informed staff that he objected to the housing assignment.

81.

Medical records document continued elevated blood pressure readings.

82.

Medical personnel continued to observe Plaintiff while he remained restrained.

83.

--------------------------------------------------------------------------------

Plaintiff remained in restraints through portions of June 28, 2023.

84.

Medical personnel documented blood pressure readings of approximately 160/104.

85.

Medical personnel documented continued restraint status.

86.

Plaintiff alleges that he was deprived of adequate food while restrained.

87.

Plaintiff alleges that he was deprived of adequate water while restrained.

88.

Plaintiff alleges that he was exposed to cold conditions while restrained.

89.

Plaintiff alleges that he was threatened while restrained.

90.

Plaintiff alleges that prison officials failed to intervene despite knowledge of his condition.

E. Continuing Retaliation and Disciplinary Proceedings

91.

Following the June 2023 incidents, Plaintiff was subjected to additional disciplinary proceedings.

92.

Plaintiff pursued administrative remedies challenging those proceedings.

93.

Plaintiff filed BP-8, BP-9, BP-10, and BP-11 remedies concerning multiple incident reports.

94.

Plaintiff contended that many of the incident reports were retaliatory.

95.

Plaintiff alleged that prison officials interfered with his ability to pursue administrative remedies.

96.

Plaintiff alleges that prison officials delayed or prevented his access to necessary forms and supporting documentation.

97.

Plaintiff repeatedly sought review through the Regional Office and Central Office.

98..

Plaintiff alleges that prison officials required him to obtain staff memoranda that he was unable to secure.

99.

Plaintiff continued pursuing administrative remedies despite repeated procedural obstacles.

100.

Plaintiff contends that these actions were part of a continuing pattern of retaliation.

F. July August 2023: Continuing Retaliation, SHU Confinement, and Disciplinary Proceedings

101.

Following the June 27, 2023 use-of-force incident, Plaintiff remained confined in the Special Housing Unit ("SHU").

102.

Plaintiff alleges that Defendants continued to retaliate against him because of his religious exercise, complaints, and use of the administrative remedy process.

103.

During July 2023, prison officials issued additional incident reports against Plaintiff.

104.

Plaintiff contends that several of these incident reports were fabricated, exaggerated, retaliatory, or issued in bad faith.

105.

Plaintiff repeatedly denied engaging in the conduct alleged in various disciplinary reports.

106.

Plaintiff maintained that prison officials were using the disciplinary process to justify retaliatory actions.

107.

Plaintiff submitted administrative remedies challenging disciplinary actions and staff conduct.

108.

Plaintiff alleged that prison officials interfered with his ability to prepare and file administrative remedies.

109.

Plaintiff alleges that staff failed to provide requested documentation and supporting materials.

110.

Plaintiff continued to pursue administrative remedies despite repeated procedural obstacles.

111.

Plaintiff alleges that prison staff subjected him to ongoing racial and religious hostility.

112.

Plaintiff alleges that prison officials threatened him because he continued to pursue grievances.

113.

Plaintiff alleges that Defendants intended to discourage Plaintiff from exercising his constitutional and statutory rights.

---

G. August 24, 2023   Calculated Use of Force

114.

On or about August 24, 2023, prison officials conducted a calculated use of force against Plaintiff.

115.

Defendant Lieutenant D. Hensley authorized, supervised, or participated in the use of force.

116.

Plaintiff alleges that force was used against him in a manner that was unnecessary and excessive.

117.

Plaintiff alleges that multiple correctional officers participated in the use of force.

118.

Following the use of force, Plaintiff was medically evaluated.

119.

Medical records document that Plaintiff complained of pain to his right hand.

120.

Medical personnel documented ecchymosis and bruising involving Plaintiff's right hand.

121.

Medical personnel documented abrasions to Plaintiff's inner thighs.

122.

Medical records document Plaintiff's pulse at approximately 124 beats per minute.

123.

Medical records document Plaintiff's blood pressure at approximately 183/93.

124.

Medical personnel documented that Plaintiff had sustained physical injuries.

125.

Plaintiff alleges that the force used caused serious injury to his right hand.

126.

Plaintiff alleges that he suffered severe pain following the use of force.

127.

--------------------------------------------------------------------------------

Plaintiff contends that the force used exceeded any legitimate penological need.

128.

Plaintiff further alleges that prison officials attempted to justify the use of force through disciplinary proceedings.

---

H. August 24, 2023   Four-Point Restraints

129.

Following the use of force, Plaintiff was placed in four-point restraints.

130.

Plaintiff remained restrained for an extended period.

131.

Medical staff repeatedly evaluated Plaintiff while he remained restrained.

132.

Medical personnel documented elevated blood pressure during restraint placement.

133.

Medical personnel documented continued complaints of pain.

134.

Plaintiff alleges that he was denied meaningful relief from his injuries while restrained.

135.

Plaintiff alleges that he was denied adequate food during portions of the restraint period.

136.

Plaintiff alleges that he was denied adequate water during portions of the restraint period.

137.

Plaintiff alleges that he was denied adequate medical care during portions of the restraint period.

138.

Plaintiff alleges that correctional staff verbally abused and threatened Plaintiff while restrained.

139.

Medical personnel continued to document Plaintiff's restraint status.

140.

Plaintiff remained under the control and supervision of Defendants throughout the restraint period.

)

------------------------------------------------------------------------------------------

---

I. August 25, 2023   Right Hand Injury and Delayed Medical Care

141.

On August 25, 2023, Plaintiff continued to experience significant pain involving his right hand.

142.

Plaintiff informed medical personnel that he believed he required an x-ray examination.

143.

Medical personnel documented swelling extending from Plaintiff's thumb to his wrist.

144.

Medical personnel documented tenderness upon palpation.

145.

Medical personnel documented decreased range of motion.

146.

Medical personnel documented continuing pain.

147.

Medical personnel documented a body temperature of approximately 100.6 degrees Fahrenheit.

148.

Medical personnel documented Plaintiff's pulse at approximately 110 beats per minute.

149.

Medical personnel documented Plaintiff's blood pressure at approximately 146/110.

150.

Medical personnel determined that radiological imaging was necessary.

151.

An order was placed for x-ray examination of Plaintiff's right hand.

152.

Plaintiff alleges that prison officials failed to timely diagnose and treat his hand injury.

153.

Plaintiff alleges that he continued to suffer unnecessary pain because of the delay.

154.

Plaintiff alleges that Defendants knew of his injury and failed to provide adequate care.

---

J. September 2023   Continuing Administrative Remedies and Retaliation

155.

During September 2023, Plaintiff continued to pursue administrative remedies.

156.

Plaintiff challenged disciplinary reports through the Bureau of Prisons Administrative Remedy Program.

157.

Plaintiff submitted BP-10 appeals to the Northeast Regional Office.

158.

Plaintiff submitted BP-11 appeals to the Central Office.

159.

Plaintiff alleged that disciplinary charges had been fabricated or exaggerated.

160.

Plaintiff alleged that prison officials acted in retaliation for Plaintiff's protected conduct.

161.

Plaintiff alleged that prison officials interfered with his ability to pursue administrative remedies.

162.

Plaintiff alleges that institutional staff refused to provide requested documentation.

163.

Plaintiff alleges that prison officials obstructed his efforts to obtain staff memoranda.

164.

Plaintiff continued to pursue administrative remedies despite these obstacles.

165.

Plaintiff alleges that Defendants acted with the purpose of discouraging future complaints and grievances.

---

K. Continuing Physical Injury

166.

Throughout the months following the August 24, 2023 use of force, Plaintiff continued to experience pain in his right hand.

167.

Plaintiff repeatedly informed prison staff that his hand remained injured.

168.

Plaintiff continued to experience difficulty using his right hand.

169.

Plaintiff experienced continuing pain and discomfort.

170.

Plaintiff alleges that Defendants failed to provide timely and adequate medical treatment.

171.

Plaintiff contends that the delay in diagnosis and treatment prolonged his pain and suffering.

172.

Plaintiff continued to seek medical attention for his injuries.

173.

Plaintiff's complaints were repeatedly documented by prison medical staff.

174.

Plaintiff alleges that Defendants acted with deliberate indifference to his serious medical needs.

175.

Plaintiff alleges that the failure to timely diagnose and treat his injuries caused additional physical and emotional harm.

L. October 16, 2023   Calculated Use of Force, OC Spray, and Hard Ambulatory Restraints

176.

On or about October 16, 2023, Defendants initiated another calculated use of force against Plaintiff while he remained confined at FCI Berlin.

177.

Plaintiff alleges that the use of force was unnecessary, excessive, retaliatory, and undertaken in bad faith.

178.

Plaintiff alleges that correctional staff assembled a calculated use-of-force team.

179.

Plaintiff alleges that explosive diversionary devices, chemical agents, and physical force were employed during the operation.

180.

Defendant Lieutenant D. Hensley authorized, supervised, participated in, or otherwise approved the use of force.

181.

Plaintiff alleges that correctional staff deployed oleoresin capsicum ("OC") spray against Plaintiff.

182.

Medical records document that OC spray was deployed during the incident.

183.

Plaintiff informed staff that he suffered from asthma.

184.

Plaintiff advised staff that he was experiencing difficulty breathing.

185.

Plaintiff requested that he be permitted to elevate his head due to breathing difficulties.

186.

Medical records document Plaintiff's statement that he suffered from asthma.

187.

Medical records document Plaintiff's complaints of shortness of breath.

188.

Medical records document that Plaintiff's pulse was approximately 118 beats per minute.

189.

Medical records document that Plaintiff's respiratory rate was elevated.

190.

Medical records document that Plaintiff exhibited signs of physiological distress.

191.

Plaintiff alleges that Defendants failed to adequately respond to his respiratory complaints.

192.

Plaintiff alleges that Defendants knowingly exposed Plaintiff to a substantial risk of serious harm.

---

M. October 16, 2023   Hard Ambulatory Restraints

193.

Following the use of force, Plaintiff was placed in hard ambulatory restraints.

194.

Medical records document that Plaintiff remained in hard ambulatory restraints.

195.

Medical records repeatedly describe Plaintiff as remaining in "hard ambulatory restraints x4."

196.

Plaintiff remained under the complete control of correctional staff.

197.

Medical personnel conducted repeated restraint checks.

198.

Medical records document blood pressure readings of approximately 144/94.

199.

Medical records document blood pressure readings of approximately 156/91.

200.

Medical personnel documented continued restraint placement despite Plaintiff's complaints.

201.

Plaintiff alleges that the restraints caused pain, discomfort, and physical injury.

202.

--------------------------------------------------------------------------------

Plaintiff alleges that Defendants failed to remove the restraints despite knowledge of Plaintiff's condition.

203.

Plaintiff alleges that Defendants maintained the restraints for punitive rather than legitimate security purposes.

204.

Plaintiff alleges that the prolonged restraint placement constituted cruel and unusual punishment.

---

N.. October 16, 2023   Continuing Hand Injury

205.

During medical evaluations following the October 16, 2023 use of force, Plaintiff continued to complain of injury to his right hand.

206.

Medical records document Plaintiff's statement that his finger remained broken.

207.

Plaintiff advised medical staff that he continued to suffer significant pain.

208.

Plaintiff alleged that his hand injury had never been adequately treated.

209.

Plaintiff continued to experience decreased function of his right hand.

210.

Plaintiff continued to experience pain with movement.

211.

Plaintiff continued to experience swelling and tenderness.

212.

Plaintiff alleges that Defendants were aware of his continuing injury.

213.

Plaintiff alleges that Defendants failed to provide timely and appropriate diagnostic treatment.

214.

Plaintiff alleges that Defendants consciously disregarded his serious medical needs.

---

)

------------------------------------------------------------------------------

O. Administrative Remedy Process

215.

Plaintiff pursued administrative remedies concerning the incidents described herein.

216.

Plaintiff filed BP-8 requests for informal resolution.

217.

Plaintiff filed BP-9 administrative remedies at the institutional level.

218.

Plaintiff filed BP-10 appeals with the Northeast Regional Office.

219.

Plaintiff filed BP-11 appeals with the Central Office.

220.

Plaintiff pursued administrative remedies concerning Incident Report No. 3789274.

221.

Plaintiff pursued administrative remedies concerning Incident Report No. 3790010.

222.

Plaintiff pursued administrative remedies concerning Incident Report No. 3792218.

223.

Plaintiff pursued administrative remedies concerning Incident Report No. 3798430.

224.

Plaintiff pursued administrative remedies concerning Incident Report No. 3800307.

225.

Plaintiff pursued administrative remedies concerning Incident Report No. 3801634.

226.

Plaintiff pursued administrative remedies concerning Incident Report No. 3801766.

227.

Plaintiff pursued administrative remedies concerning Incident Report No. 3812955.

228.

Plaintiff pursued administrative remedies concerning Incident Report No. 3814326.

------------------------------------------------------------------------------------------------

229.

Plaintiff pursued administrative remedies concerning Incident Report No. 3816827.

230.

Plaintiff pursued administrative remedies concerning Incident Report No. 3817131.

231.

Plaintiff pursued administrative remedies concerning Incident Report No. 3823925.

232.

Plaintiff pursued administrative remedies concerning Incident Report No. 3840681.

233.

Plaintiff repeatedly alleged retaliation, excessive force, denial of medical care, religious discrimination, and procedural violations..

234.

Plaintiff repeatedly sought review from institutional, regional, and national officials.

235.

Plaintiff received multiple procedural rejections.

236.

Plaintiff was repeatedly instructed to obtain staff memoranda explaining alleged untimeliness.

237.

Plaintiff informed prison officials that he was unable to obtain the requested memoranda because prison staff refused to provide them.

238.

Plaintiff continued pursuing administrative remedies despite repeated procedural obstacles.

239.

Several administrative appeals were remanded for rehearing.

240.

Plaintiff contends that the administrative remedy process was repeatedly frustrated by prison officials.

---

P. November 30, 2023   Diagnostic Confirmation of Hand Injury

241.

On or about November 30, 2023, Plaintiff underwent x-ray examination of his right hand while housed at FTC Oklahoma City.

---------------------------------------------------------------------------------------------------------

242.

The radiology report documented an old healed fracture of the fourth metacarpal.

243.

The radiology report documented that Plaintiff had experienced right-hand pain for approximately three months..

244.

The radiology findings were consistent with a prior injury.

245.

Plaintiff contends that the fracture occurred during the events described in this Complaint.

246.

Plaintiff alleges that Defendants failed to timely diagnose and treat the fracture.

247.

Plaintiff alleges that the delay in diagnosis caused unnecessary pain and suffering.

248..

Plaintiff continues to experience pain and impairment related to the injury.

249.

Plaintiff suffered physical injury, emotional distress, and mental anguish as a result of Defendants' actions.

250.

The acts and omissions of Defendants, individually and collectively, caused Plaintiff substantial damages.

Q. Pattern, Practice, and Custom Allegations

251.

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

252.

Plaintiff alleges that the constitutional, statutory, and tortious violations described in this Complaint were not isolated events.

253.

Plaintiff alleges that Defendants acted pursuant to institutional customs, practices, policies, or unofficial practices tolerated by supervisory officials.

254.

Defendant Richard Luna exercised supervisory authority over correctional operations, use of force procedures, restraint practices, SHU operations, and inmate safety at FCI Berlin.

255.

Defendant Richard Luna knew or reasonably should have known of repeated allegations involving excessive force, retaliation, prolonged restraints, and staff misconduct occurring at FCI Berlin.

256.

Defendant Richard Luna failed to adequately supervise subordinate staff.

257.

Defendant Richard Luna failed to adequately train correctional staff regarding constitutional limitations on the use of force.

258.

Defendant Richard Luna failed to adequately train staff regarding religious accommodations and religious discrimination.

259.

Defendant Richard Luna failed to adequately train staff regarding inmate medical emergencies.

260.

Defendant Richard Luna failed to adequately train staff regarding the use and duration of four-point restraints.

261.

Defendant Richard Luna failed to adequately train staff regarding hard ambulatory restraints.

262.

Defendant Richard Luna failed to adequately train staff regarding intervention obligations when excessive force occurs.

263.

----------------------------------------------------------------------------------------------------

Plaintiff alleges that supervisory staff tolerated retaliatory disciplinary practices..

264.

Plaintiff alleges that supervisory staff tolerated retaliation against inmates who utilized the administrative remedy process.

265.

Plaintiff alleges that supervisory staff tolerated retaliation against inmates who exercised religious rights.

266.

Plaintiff alleges that supervisory staff tolerated unnecessary uses of force.

267.

Plaintiff alleges that supervisory staff tolerated prolonged restraint practices.

268.

Plaintiff alleges that supervisory staff tolerated deliberate indifference to inmate medical needs.

269.

Plaintiff alleges that supervisory staff tolerated religious discrimination.

270.

Plaintiff alleges that supervisory staff tolerated racial discrimination.

271.

Plaintiff alleges that supervisory staff tolerated falsification, exaggeration, or misuse of disciplinary reports.

272.

Plaintiff alleges that supervisory staff failed to investigate complaints of staff misconduct.

273.

Plaintiff alleges that supervisory staff failed to discipline offending officers.

274.

Plaintiff alleges that supervisory staff failed to implement corrective measures.

275.

Plaintiff alleges that Defendants acted pursuant to a pattern of retaliation against Plaintiff.

276.

Plaintiff alleges that Defendants acted pursuant to a pattern of religious hostility toward Plaintiff.

277.

Plaintiff alleges that Defendants acted pursuant to a pattern of racial hostility toward Plaintiff.

--------------------------------------------------------------------------------

278.

Plaintiff alleges that Defendants acted pursuant to a pattern of excessive force and punishment.

279.

Plaintiff alleges that Defendants acted pursuant to a pattern of deliberate indifference to Plaintiff's medical needs.

280.

Plaintiff alleges that the conduct described herein was foreseeable to supervisory officials.

281.

Plaintiff alleges that supervisory officials failed to take reasonable corrective action.

282.

Plaintiff alleges that these failures directly and proximately caused Plaintiff's injuries.

---

R. Administrative Tort Claim and Exhaustion Under the FTCA

283.

Plaintiff submitted a Standard Form 95 administrative tort claim to the Bureau of Prisons..

284.

Plaintiff's administrative tort claim described the factual allegations underlying this action.

285.

Plaintiff's administrative tort claim identified numerous incidents occurring at FCI Berlin.

286.

Plaintiff's administrative tort claim alleged excessive force.

287.

Plaintiff's administrative tort claim alleged assault and battery.

288.

Plaintiff's administrative tort claim alleged negligence.

289.

Plaintiff's administrative tort claim alleged deliberate indifference to medical needs.

290.

Plaintiff's administrative tort claim alleged retaliation.

291.

Plaintiff's administrative tort claim alleged religious discrimination..

292.

Plaintiff's administrative tort claim alleged racial discrimination.

293.

Plaintiff's administrative tort claim alleged prolonged restraint abuse.

294.

Plaintiff's administrative tort claim alleged physical injuries, emotional injuries, and constitutional harms.

295.

The Bureau of Prisons acknowledged receipt of Plaintiff's administrative tort claim.

296.

Plaintiff diligently pursued his administrative remedies and tort remedies.

297.

Plaintiff exhausted all remedies reasonably available to him.

298.

To the extent administrative remedies were unavailable, Plaintiff alleges that prison officials impeded, frustrated, or prevented meaningful exhaustion.

299.

Plaintiff exercised reasonable diligence throughout the administrative process.

300.

Plaintiff satisfies all applicable administrative prerequisites to the extent required by law.

---

COUNT I

Federal Tort Claims Act   Negligence

(Against Defendant United States of America)

301.

Plaintiff incorporates all preceding paragraphs.

302.

Employees of the United States owed Plaintiff a duty of reasonable care.

303.

Federal employees breached those duties.

304.

Federal employees failed to protect Plaintiff from foreseeable harm.

305.

Federal employees failed to provide adequate medical care.

306.

Federal employees negligently supervised and monitored restraint procedures.

307.

Federal employees negligently failed to diagnose and treat Plaintiff's injuries.

308.

Federal employees negligently failed to protect Plaintiff's religious rights.

309.

Federal employees negligently failed to protect Plaintiff from retaliation.

310.

Federal employees negligently failed to intervene to prevent foreseeable injury.

311.

As a direct and proximate result of these breaches, Plaintiff suffered physical injury.

312.

As a direct and proximate result of these breaches, Plaintiff suffered emotional distress.

313.

As a direct and proximate result of these breaches, Plaintiff suffered pain and suffering.

314.

As a direct and proximate result of these breaches, Plaintiff suffered continuing damages.

---

COUNT II

Federal Tort Claims Act   Assault and Battery

(Against Defendant United States of America)

315.

Plaintiff incorporates all preceding paragraphs.

316.

--------------------------------------------------------------------------------

Federal employees intentionally used force against Plaintiff.

317.

Plaintiff alleges that such force was unreasonable and excessive.

318.

Plaintiff did not consent to the force used against him.

319.

Plaintiff suffered physical injuries as a result.

320.

Plaintiff suffered emotional injuries as a result.

---

COUNT III

Federal Tort Claims Act   Intentional Infliction of Emotional Distress

(Against Defendant United States of America)

321.

Plaintiff incorporates all preceding paragraphs.

322.

Defendants engaged in extreme and outrageous conduct.

323.

Defendants intended to cause emotional distress or acted with reckless disregard of the probability of causing emotional distress.

324.

Plaintiff suffered severe emotional distress.

325.

Plaintiff suffered continuing psychological injury.

326.

Defendants' conduct was a direct and proximate cause of Plaintiff's injuries.

---

COUNT IV

Religious Freedom Restoration Act (RFRA)

327.

Plaintiff incorporates all preceding paragraphs.

328.

Plaintiff's Islamic religious beliefs are sincere.

329.

Plaintiff's practice of wearing a kufi constitutes religious exercise protected by RFRA.

330.

Defendants substantially burdened Plaintiff's religious exercise.

---------------------------------------------------------------------------------------------

## COUNT IV

Religious Freedom Restoration Act ("RFRA")

(Against Individual Defendants)

331.

Plaintiff's religious exercise included the wearing of a religious kufi and adherence to sincerely held Islamic beliefs.

332.

Defendants were aware of Plaintiff's sincerely held religious beliefs.

333.

Defendants confiscated Plaintiff's religious kufi.

334.

Defendants interfered with Plaintiff's religious exercise.

335.

Defendants retaliated against Plaintiff after Plaintiff asserted his religious rights.

336.

Defendants imposed substantial burdens upon Plaintiff's religious exercise.

337.

Defendants failed to utilize the least restrictive means of furthering any compelling governmental interest.

338.

Defendants' actions caused Plaintiff spiritual, emotional, and physical injury.

339.

Plaintiff suffered emotional distress and humiliation.

340.

Plaintiff is entitled to relief authorized under RFRA.

---

## COUNT V

Bivens   Eighth Amendment Excessive Force

(Against Tawes, McCormack, Hensley, Paige, O'Sullivan, LeBron, Beck, John Does)

--------------------------------------------------------------------------

341.

Plaintiff incorporates all preceding paragraphs.

342.

Defendants acted under color of federal law.

343.

Defendants used physical force against Plaintiff.

344.

Defendants utilized force that exceeded legitimate penological objectives.

345.

Plaintiff was subjected to four-point restraints.

346.

Plaintiff was subjected to hard ambulatory restraints.

347.

Plaintiff was subjected to chemical agents.

348.

Plaintiff was subjected to calculated uses of force.

349.

Plaintiff suffered physical injuries including injury to his right hand.

350.

Plaintiff suffered bruising and abrasions.

351.

Plaintiff suffered respiratory distress.

352.

Plaintiff suffered pain and suffering.

353.

Defendants acted maliciously, sadistically, or with reckless disregard for Plaintiff's rights.

354.

Defendants' conduct violated Plaintiff's rights under the Eighth Amendment.

355.

- 1

--------------------------------------------------------------------------------

Plaintiff suffered damages as a direct result of Defendants' conduct.

---

COUNT VI

Bivens   Eighth Amendment Deliberate Indifference to Serious Medical Needs

(Against Golden, Cote, Pelletier, Larin, and John Doe Medical Staff)

356.

Plaintiff incorporates all preceding paragraphs.

357.

Plaintiff suffered objectively serious medical needs.

358.

Defendants were aware of Plaintiff's medical conditions and complaints.

359.

Defendants documented Plaintiff's elevated blood pressure.

360.

Defendants documented Plaintiff's tachycardia.

361.

Defendants documented Plaintiff's hand injury.

362.

Defendants documented swelling, tenderness, and decreased range of motion.

363.

Defendants documented Plaintiff's asthma and respiratory complaints.

364.

Defendants knew Plaintiff complained of severe pain.

365.

Defendants failed to provide timely and adequate medical treatment.

366.

Defendants failed to timely diagnose Plaintiff's hand fracture.

367.

Defendants failed to adequately respond to Plaintiff's respiratory distress.

368.

Defendants consciously disregarded substantial risks of serious harm.

369.

Plaintiff suffered physical injury, emotional injury, and prolonged pain.

370.

Defendants violated Plaintiff's rights under the Eighth Amendment.

---

COUNT VII

Bivens   First Amendment Retaliation

(Against Tawes, McCormack, Paige, O'Sullivan, LeBron, Hensley, Beck, and John Does)

371.

Plaintiff incorporates all preceding paragraphs.

372.

Plaintiff engaged in protected conduct.

373.

Plaintiff exercised his religious rights.

374.

Plaintiff utilized the administrative remedy process.

375.

Defendants were aware of Plaintiff's protected conduct.

376.

Defendants subjected Plaintiff to adverse actions.

377.

Defendants subjected Plaintiff to retaliatory disciplinary proceedings.

378.

Defendants subjected Plaintiff to retaliatory housing assignments.

379.

Defendants subjected Plaintiff to retaliatory force.

380.

----------------------------------------------------------------------------------------

Defendants subjected Plaintiff to retaliatory restraints.

381.

Defendants subjected Plaintiff to retaliatory harassment.

382.

Defendants' actions would deter a person of ordinary firmness from exercising protected rights.

383.

Plaintiff suffered physical and emotional injuries.

384.

Defendants acted because of Plaintiff's protected conduct.

385.

Plaintiff suffered damages as a result.

---

COUNT VIII

Bivens   Failure to Protect

(Against Luna, Tawes, McCormack, LeBron, Beck, and John Does)

386.

Plaintiff incorporates all preceding paragraphs.

387.

Defendants knew Plaintiff objected to certain housing assignments.

388.

Defendants knew Plaintiff believed he faced a substantial risk of harm.

389.

Defendants nevertheless attempted to place Plaintiff in housing assignments over his objections.

390.

Defendants failed to protect Plaintiff from foreseeable harm.

391.

Defendants failed to intervene to prevent injury.

392.

Defendants acted with deliberate indifference.

-----------------------------------------------------------------------------------------------

393.

Plaintiff suffered physical injury.

394.

Plaintiff suffered emotional injury.

395.

Plaintiff suffered constitutional injury.

---

COUNT IX

Civil Conspiracy

(Against All Individual Defendants)

396.

Plaintiff incorporates all preceding paragraphs.

397.

Defendants acted jointly and in concert.

398.

Defendants agreed to engage in retaliatory, discriminatory, and unconstitutional conduct.

399.

Defendants participated in overt acts in furtherance of that agreement.

400.

Those overt acts included retaliatory discipline, excessive force, prolonged restraints, denial of medical care, and interference with religious exercise.

401.

Defendants acted intentionally, knowingly, or recklessly.

402.

Plaintiff suffered physical injury.

403.

Plaintiff suffered emotional injury.

404.

Plaintiff suffered spiritual injury.

405.

--------------------------------------------------------------------------------

Plaintiff suffered constitutional injury.

---

DAMAGES

406.

As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injury.

407.

Plaintiff suffered a fracture of the fourth metacarpal of his right hand.

408.

Plaintiff suffered bruising, abrasions, pain, and physical impairment.

409.

Plaintiff suffered respiratory distress.

410.

Plaintiff suffered emotional distress.

411.

Plaintiff suffered mental anguish.

412.

Plaintiff suffered humiliation.

413.

Plaintiff suffered spiritual injury.

414.

Plaintiff suffered constitutional injury.

415.

Plaintiff suffered pain and suffering.

416.

Plaintiff continues to suffer damages.

417.

Plaintiff seeks compensatory damages in the amount of $500,000,000 for physical injuries.

418.

Plaintiff seeks compensatory damages in the amount of $500,000,000 for emotional and psychological injuries.

----------------------------------------------------------------------------------------------------

419.

Plaintiff seeks compensatory damages in the amount of $500,000,000 for religious discrimination and burdens on religious exercise.

420.

Plaintiff seeks compensatory damages in the amount of $500,000,000 for constitutional injuries and cruel and unusual punishment.

421.

Plaintiff seeks punitive damages against the individual defendants in the amount of $100,000,000, where legally available.

---

PRAYER FOR RELIEF

422.

Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants.

423.

Plaintiff requests compensatory damages.

424.

Plaintiff requests punitive damages where permitted by law.

425.

Plaintiff requests declaratory relief.

426.

Plaintiff requests injunctive relief as appropriate.

427.

Plaintiff requests costs of suit.

428.

Plaintiff requests preservation of all evidence, including incident reports, medical records, restraint logs, use-of-force packets, photographs, and video recordings.

429.

Plaintiff requests such further relief as the Court deems just and proper.

---

JURY DEMAND

430.

--------------------------------------------------------------------------------

Plaintiff demands trial by jury on all issues so triable.

---

VERIFICATION

431.

I, Rashawn Hawari-Rasulullah, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing allegations are true and correct to the best of my knowledge, information, and belief.

Executed on: _7 - 6 - 2026_

Rashawn Hawari-Rasulullah Plaintiff, Pro Se

---

CERTIFICATE OF SERVICE

432.

I certify that a copy of this Complaint will be served in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of New Hampshire.

Executed on: _7 6 2026_

Rashawn Hawari-Rasulullah Plaintiff, Pro Se